**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Michael R. Lange, and Sky Robotics, Inc.,

Plaintiffs,

v.

Mark A. Litman, and Mark A. Litman & Associates, P.A.,

Defendants.

Civil No. 11-2387 (DWF/JSM)

**MEMORANDUM OPINION AND ORDER**

---

Paul A. Sortland, Esq., Sortland Law Office, counsel for Plaintiffs.

Charles E. Lundberg, Esq., Patrick J. Sauter, Esq., and Jeffrey R. Mulder, Esq., Bassford Remele, P.A., counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. No. 28). For the reasons set forth below, the Court grants Defendants' motion.

## BACKGROUND

### I. Counterweight Application

On December 29, 2003, Plaintiff Michael R. Lange ("Lange") executed a patent license agreement (the "License Agreement") on behalf of Plaintiff Sky Robotics, Inc.

(“Sky Robotics”)[1] with GP Companies, Inc. (“GP”). (Doc. No. 31, Mulder Decl. ¶ 9, Ex. 8.) Pursuant to the License Agreement, GP would make, sell, and market automated window washing machines that utilized some of Sky Robotics’ patents in exchange for royalty fees. (*Id.*) After executing the License Agreement, Lange worked with Dallas Simonette (“Simonette”), an independent contractor working for GP, to develop a prototype of an automated window washing machine for commercial sale. (*See* Mulder Decl. ¶ 11, Ex. 10 (“Simonette Dep.”) at 23:25-25:25.) Unlike Lange’s previous designs, this machine used a counterweight to maintain contact between the machine and the building (the “Counterweight Machine”). (Mulder Decl. ¶ 12, Ex. 11.)

After Lange and Simonette developed a prototype of the Counterweight Machine, GP elected to pursue patent protection for the machine. (Mulder Decl. ¶ 2, Ex. 1 (“Lange Dep. I”) at 221:6-222:1.) In July 2004, GP retained Defendants Mark A. Litman (“Litman”) and Mark A. Litman & Associates, P.A. to prosecute a patent application for the Counterweight Machine. (Doc. No. 34, Bartz Aff. ¶ 11; Mulder Decl. ¶ 10, Ex. 9 (“Litman Dep.”) at 134:24-135:4.) Lange and Simonette assigned Litman power of attorney to prosecute the patent application and to transact all business with the United States Patent and Trademark Office (“USPTO”) related to the patent application. (*See* Doc. 33, Lange Aff. ¶ 21.)

[1] Lange is the Chief Executive Officer of Sky Robotics. (Doc. No. 31, Mulder Decl. ¶ 2, Ex. 1 (“Lange Dep. I”) at 24:14-15.)

On November 5, 2004, Litman filed Patent Application Number 10/982,505 (the "Counterweight Application") with the USPTO. (Mulder Decl. ¶ 12, Ex. 11.) The Counterweight Application named both Simonette and Lange as inventors. (*Id.*) Litman listed Simonette as the first inventor and Lange as the second inventor. (*Id.*) Lange contends that he asked Litman to list him as first inventor on the Counterweight Application; the record indicates, however, that no such change was made. (*See* Lange Dep. I at 178:25-179:14.)

**II. International Patent Rights for the Counterweight Machine**

In accordance with foreign patent law, GP and Plaintiffs had one year from the date of filing the Counterweight Application (until November 5, 2005) to file for international patent rights associated with the Counterweight Machine. (*See* Bartz Aff. ¶¶ 32-34.) Litman sent written notices of the international patent rights filing deadline to GP and Simonette on August 5, 2005 and September 15, 2005, and to GP on October 17, 2005. (*See* Mulder Decl. ¶¶ 13-16, Exs. 12-15.) GP declined to seek international patent protection. (Litman Dep. at 94:4-17.)

Litman did not send written notice of the filing deadline to Plaintiffs. (Lange Aff. ¶ 34.) Plaintiffs contend that they would have sought international patent rights for the Counterweight Machine in 63 countries[2] if Defendants had provided them with notice of this deadline. (*See* Mulder Decl. ¶ 17, Ex. 16 at 10.) Plaintiffs rely on Richard O. Bartz's

---

[2] Plaintiffs have not specifically identified each of the 63 countries. (*See* Lange Dep. I at 249:16-254:13.)

("Bartz") expert affidavit for their contention that there was a "reasonable opportunity" to secure international patent rights based upon the Counterweight Application. (Bartz Aff. ¶ 39.) Because the deadline has expired, Lange is now precluded from securing international rights for the Counterweight Machine. (*See* Lange Aff. ¶ 36.)

**III. Simonette Fan Application**

On July 13, 2007, Litman filed Provisional Patent Application Number 60/959,409, and on July 14, 2008, he filed Patent Application Number 12/218,347 (the "Simonette Fan Application") on behalf of Simonette and IPC Eagle,[3] for an automated window washing machine (the "Simonette Fan Machine"). (Mulder Decl. ¶ 20, Ex. 19; Bartz Aff. ¶ 58.) Unlike the Counterweight Machine, the Simonette Fan Machine utilized a "fan" or "thruster" to maintain contact between the washing machine and the building. (Litman Dep. at 21:20-22:1-5.) The Simonette Fan Application was ultimately rejected by the USPTO because of conflicts with prior art. (*See* Mulder Decl. ¶ 25, Ex. 24 ("Bartz Dep.") at 14:15-21, 30:18-21.)

The Simonette Fan Application did not include Lange as an inventor. (Mulder Decl. ¶ 20, Ex. 19.) After learning about the Simonette Fan Application, Lange claimed inventorship and requested that he be named as an inventor on the application. (Mulder Decl. ¶ 21, Ex. 20.) Lange asserts that the Simonette Fan Machine was his idea, and that he described the idea to Litman on a number of occasions. (Lange Aff. ¶¶ 60-64.) Lange

[3] Defendants assert that at the time of the Simonette Fan Application filing, IPC Eagle was a stand-alone entity from GP, and Simonette was an independent contractor for IPC Eagle. (Mulder Decl. ¶¶ 18-19, Exs. 17-18.)

contends that he requested that Litman file a second patent application or a continuation-in-part to the Counterweight Application to include the fan as an addition to the invention. (*Id.* ¶ 49.) Lange further claims that the Simonette Fan Application used many of the same drawings as those included in the Counterweight Application. (*Id.* ¶ 57.) The record before the Court indicates that Litman has not attempted to add Lange as a joint inventor to the Simonette Fan Application. (*See* Bartz Aff. ¶ 45.)

On December 12, 2007, Lange revoked Litman's power of attorney and granted power of attorney to Richard O. Bartz ("Bartz") and R. John Bartz to complete the prosecution of the Counterweight Application on his behalf. (Lange Aff. ¶ 51.) After January 1, 2008, Lange and Sky Robotics changed one of the claims contained in the Counterweight Application from a "counterweight" to a "counterforce." (Mulder Decl. ¶ 23, Ex. 22 ¶ 9.) On February 23, 2010, the USPTO issued a patent (Patent Number 7,665,173) incorporating this change to the Counterweight Application. (Mulder Decl. ¶ 24, Ex. 23.)

Bartz has also submitted a patent application (Patent Application Number 12/660,246) (the "Lange Fan Application") on Lange's behalf, which describes itself as a continuation of the Simonette Fan Application and a continuation in part of the Counterweight Application. (Mulder Decl. ¶ 26, Ex. 25; *see* Bartz Aff. ¶¶ 52-53.) The Lange Fan Application seeks patent protection for an automated window washing machine (the "Lange Fan Machine") that utilizes a fan to maintain contact between the machine and the building. (Mulder Decl. ¶ 26, Ex. 25; *see* Bartz Aff. ¶¶ 52-53.) Plaintiffs' application claims priority from the date on which the Simonette Fan

Application was initially filed. (*See* Mulder Decl. ¶ 26, Ex. 25; Bartz Aff. ¶¶ 53-58.) The Lange Fan Application is currently pending before the USPTO. (*See* Bartz Dep. at 13:8-14:14.)

**IV. Procedural History**

Plaintiffs initially filed a lawsuit arising from the dispute at issue in state court in October 2010. (*See* Doc. No. 30 at 10.) On September 30, 2011, Hennepin County District Judge William R. Howard dismissed the state court action due to lack of subject matter jurisdiction. (Mulder Decl. ¶ 28, Ex. 27 at 4.)

On August 19, 2011, Plaintiffs filed their Complaint in the federal action now before this Court. (Doc. No. 1, Compl.) Plaintiffs have asserted the following four claims against Defendants: (1) negligence; (2) negligence—conflict of interest; (3) breach of contract; and (4) breach of fiduciary duty. (*Id*. ¶¶ 85-105.)

Defendants now move for summary judgment on all counts. (Doc. No. 28.)

## DISCUSSION

**I. Summary Judgment Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Negligence Claims

At the heart of this case is Plaintiffs' claim that Defendants committed legal malpractice because Defendants breached their duties to provide proper and reasonable counsel to Plaintiffs and to avoid conflicts of interest. Specifically, Plaintiffs assert that Defendants committed three acts of negligence: (1) failing to list Lange as the first inventor on the Counterweight Application; (2) failing to provide notice to Plaintiffs of the deadline to file for international patent rights associated with the Counterweight Application and to file for international patent rights; and (3) failing to list Lange as an inventor or Sky Robotics as an assignee on the Simonette Fan Application. (Compl.) Plaintiffs contend that, because of Defendants' negligence, Plaintiffs have suffered significant economic damages and substantial harm. (*Id.*)

Under Minnesota law, a claimant alleging legal malpractice must prove: (1) an attorney-client relationship existed; (2) acts by the attorney amounted to negligence or breach of contract; (3) the attorney's acts were the proximate cause of the claimant's damages; and (4) but for the attorney's acts, the claimant would have obtained a more favorable result in the transaction than the result obtained. *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816, 819 (Minn. 2006) (quoting *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn. 1983)). Failure to provide sufficient evidence of any one element is fatal to the claim. *Noske v. Friedberg*, 670 N.W.2d 740, 743 (Minn. 2003).

For the purposes of the present motion, and viewing the evidence in the light most favorable to Plaintiffs, the Court assumes, without deciding, that an attorney-client relationship existed between Defendants and Plaintiffs.[4]

---

[4] Defendants adamantly deny the existence of any attorney-client relationship between the parties. (Mulder Decl. ¶ 27, Ex. 26.) Plaintiffs, however, assert that an implied attorney-client relationship existed between Plaintiffs and Defendants based upon the following: (1) Lange assigned Litman power of attorney to prosecute the Counterweight Application (Lange Aff. ¶ 21); (2) Litman filed the Counterweight Application in which he listed Lange and Simonette as inventors (Mulder Decl. ¶ 12, Ex. 11); (3) Litman signed a response to a USPTO action, "Simonette, et al […] By Their Representatives, Mark A. Litman & Associates, P.A." (Litman Dep. at 68:24-69:25); (4) Litman sent a facsimile transmission to Lange on October 25, 2004 with the heading "Attorney Client Advice and Opinion" (Sortland Aff. ¶ 7, Ex. E); (5) Litman sent a facsimile transmission to Lange and Simonette on November 3, 2004 regarding the Counterweight Machine amended figures (Sortland Aff. ¶ 9, Ex. G); (6) Litman sent Lange and Simonette an e-mail dated November 1, 2004 regarding a draft of the Counterweight Application (Sortland Aff. ¶ 8, Ex. F); (7) Litman sent Lange an e-mail dated November 12, 2004 regarding legal advice for additional window cleaning machine technology (Sortland Aff. ¶ 12, Ex. J); (8) Litman sent a May 14, 2007 letter directed to Lange but addressed to GP regarding a response to the restriction requirement and an

(Footnote Continued on Next Page)

### A. Order of Inventors on Counterweight Application

Plaintiffs claim that Defendants acted negligently by failing to list Lange as the first-named inventor on the Counterweight Application, despite Lange's requests that he be listed first. Specifically, Plaintiffs assert that, as a result of Defendants' failure to correct the application to reflect Lange as the first inventor, Lange is not recognized as the inventor[5] "and may suffer additional economic harm in the future as a result of that lack of recognition." (Doc. No. 36 at 26.)

Under Minnesota law, speculative, remote, or conjectural damages are not recoverable. *Lassen v. First Bank*, 514 N.W.2d 831, 839 (Minn. Ct. App. 1994); *see also Olson v. Rugloski*, 277 N.W.2d 385, 388 (Minn. 1979) (determining that lost profits are recoverable if they are proven with "reasonable, although not absolute, certainty"). Here, Plaintiffs have failed to identify any specific, actual damages resulting from Defendants' conduct. Notably, Lange admitted during his deposition that the order in which the inventors are listed on the Counterweight Application does not affect Plaintiffs'

---

(Footnote Continued From Previous Page)
invoice for Defendants' legal services (Sortland Aff. ¶ 25, Ex. W); and (9) Litman sent an e-mail on November 27, 2007 seeking payment of legal fees from Lange (Sortland Aff. ¶ 31, Ex. CC). Despite the correspondence between Lange and Litman, no retainer agreement or engagement letter between the parties exists in the record, and it appears unlikely that an attorney-client relationship was ever formed between Plaintiffs and Defendants. (*See* Litman Dep. at 134:8-135:4; Lange Dep. I at 209:16-18.)

[5] Lange claims that the order of inventors on the Counterweight Application damaged him because, "[w]hen I say I have a patent and someone looks at it and they see someone else's name on it they don't think it's your patent and they don't believe you have a patent unless they have to really dig in to see you're a second inventor." (Lange Dep. I at 180:8-12.)

ownership rights. (Lange Dep. I at 185:10-13.) Even Plaintiffs' own expert, Bartz, observed that it "[d]oesn't make any difference what the order [of inventors] is, rights are the same."[6] (Bartz Dep. at 32:1-2.)

Plaintiffs have failed to provide any factual support for their claim that they have been harmed as a result of the order of inventors on the Counterweight Application. Plaintiffs cannot, as a matter of law, satisfy their burden that Defendants' actions with respect to the listed order of inventors caused them actual and quantifiable damages. *See Raske v. Gavin*, 438 N.W.2d 704, 706 (Minn. Ct. App. 1989) (affirming summary judgment for alleged negligent attorney because plaintiff could not show specific facts demonstrating the result would have been different if different legal advice had been given). The record evidence demonstrates that no injury to Plaintiffs resulted from the order of inventors listed on the Counterweight Application and that any damages in that regard are purely speculative. Therefore, Plaintiffs' negligence claims based on Defendants' failure to name Lange as first inventor cannot survive summary judgment.

**B. Notice of Deadline to Seek International Patent Rights**

Plaintiffs claim that Defendants negligently failed to notify them of the deadline to file for international patent rights associated with the Counterweight Machine. Plaintiffs contend that, but for Litman's failure to notify them of the deadline, they would not have

[6] It also appears that Lange made no further attempt to seek a change in the order of inventors before the patent was issued, despite having retained Bartz as counsel. (*See* Lange Dep. I at 187:2-4; Mulder Decl. ¶ 23, Ex. 22 ¶ 11.)

lost the opportunity to secure those international rights and would have filed for international patent rights in 63 countries. (*See* Bartz Aff. ¶¶ 16, 34-40.)

In particular, Plaintiffs assert that, given the building growth occurring overseas (where most of Plaintiffs' sales would have taken place), Defendants' conduct has caused Plaintiffs to incur substantial damages. (Mulder Decl. ¶ 32, Ex. 31.) Plaintiffs estimate that the damages measured by lost profits in overseas sales to be well in excess of $5,000,000.[7] (*Id.* at 2.) Plaintiffs further claim that, as a result of ongoing litigation related to the Counterweight Machine, manufacturers are reluctant to begin producing the machine. (Lange Aff. ¶ 41.) In addition, Plaintiffs assert that Sky Robotics' business value has diminished as a result of Defendants' actions. (Doc. No. 36 at 37.)

As previously stated, to succeed on a legal malpractice claim, Plaintiffs must provide sufficient evidence that they would have achieved a better result in the underlying transaction had Defendants' conduct not occurred. *See Jerry's Enters., Inc.*, 711 N.W.2d at 816; *see also Blue Water Corp.*, 336 N.W.2d at 282-84 (reversing judgment against attorney because there was insufficient evidence that the result in the underlying transaction would have been any different absent his negligence). Plaintiffs have not provided any evidence that, but for Defendants' conduct, they would have obtained patent rights in 63 countries. Not only have Plaintiffs failed to specifically identify the countries for which they seek patent protection for the Counterweight

---

[7] Plaintiffs' damages expert, Douglas McDonald ("McDonald"), CPA, calculates damages for the period from November 4, 2004 to 2016 to be $5,695,953. (Mulder Decl. ¶ 33, Ex. 32, App'x B.)

Application (*see* Lange Dep. I at 249:16-250:1), but they have not demonstrated that the cost of obtaining international patent rights for the Counterweight application in all 63 countries would not have been prohibitively expensive.[8] Thus, any damages in this regard are remote and purely speculative.

Plaintiffs have failed to offer specific facts to show that, but for Defendants' conduct, Plaintiffs would have achieved a better result (by way of additional, international patent protection). Consequently, to the extent Plaintiffs' negligence claims result from Defendants' failure to inform Plaintiffs of their ability to pursue international patent rights, the claims cannot survive summary judgment.

### C. Ownership of Simonette Fan Application

Finally, Plaintiffs claim that Defendants negligently failed to include Lange as an inventor on the Simonette Fan Application and failed to assign the Simonette Fan Application to Sky Robotics based upon the License Agreement. In addition, Plaintiffs claim that, but for Defendants' negligence, Plaintiffs would have realized current and potential future profits in connection with the Simonette Fan Machine and would have been recognized as having developed the subject matter of the Simonette Fan Application. (Doc. No. 36 at 30.)

---

[8] Plaintiffs may or may not have obtained any international patent rights, the value of which is debatable. Plaintiffs' own damages expert, McDonald, calculates that it would cost $467,000 to obtain patent rights in 63 countries. (Mulder Decl. ¶ 17, Ex. 16 at 10, App'x B.)

It is undisputed that no patent has issued with respect to the Simonette Fan Application and that the Simonette Fan Application has been finally rejected by the USPTO based upon prior art. (*See* Mulder Decl. ¶ 23, Ex. 22 ¶ 3; Bartz Dep. at 14:15-21.) Because no patent has issued with respect to the Simonette Fan Application, Plaintiffs cannot demonstrate that they have been damaged as a result of any failure by Defendants' to name Lange as an inventor.[9]

In light of the above, and because no genuine issue of material fact exists, the Court finds that Defendants are entitled to summary judgment as to Count 1 (negligence) and Count 2 (negligence—conflict of interest) of Plaintiffs' Complaint.

## III. Breach of Contract and Fiduciary Duty Claims

Plaintiffs also assert claims of breach of contract and breach of fiduciary duty. Plaintiffs concede that, if their negligence claims fail, their other related claims must also fail. (Doc. No. 36 at 40.) Because Plaintiffs' breach of contract and breach of fiduciary duty claims are derivative of their legal malpractice claims, Plaintiffs' failure to establish but for causation is fatal to Count 3 (breach of contract) and Count 4 (breach of fiduciary duty) as well. *Padco, Inc. v. Kinney & Lange*, 444 N.W.2d 889, 891 (Minn. Ct. App. 1989) (noting that a negligence count alleges the same elements required for a claim of a breach of fiduciary duty).

[9] Moreover, Lange has filed an additional application making similar patent claims to those contained in the Simonette Fan Application. (Mulder Decl. ¶ 26, Ex. 25.) The application claims priority from the date the Simonette Fan Application was initially filed. As such, if the USPTO determines that the inventions are patentable, it will issue a patent to the extent Plaintiffs are entitled to protection.

## IV. Emotional Distress Claim

While not articulated as a separate count of their Complaint, Plaintiffs allege emotional distress damages for the first time in their supplemental interrogatory answers. (Mulder Decl. ¶ 32, Ex. 31 at 2.) Plaintiffs claim that they are entitled to at least $1,000,000 in damages for emotional distress as a result of Defendants' alleged "willful, wanton, and malicious conduct." (*Id.*)

A plaintiff seeking emotional distress damages must prove: (1) the conduct was extreme and outrageous; and (2) the emotional distress was severe. *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 438-39 (Minn. 1983). Conduct is "extreme and outrageous" when it is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 865 (Minn. 2003). In addition, the distress inflicted must be so severe that "no reasonable man could endure it." *Hubbard*, 330 N.W.2d at 439.

Plaintiffs cannot satisfy these requirements. Plaintiffs have not alleged any facts that would meet the "extreme and outrageous" standard, nor have they provided any factual support for a claim of severe emotional distress.[10] For this reason, any claim for emotional distress damages must also fail.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

[10] Plaintiffs cannot establish a claim for emotional distress. As such, affording

(Footnote Continued on Next Page)

1. Defendants' Motion for Summary Judgment (Doc. No. [28]) is **GRANTED** in its entirety.

2. Defendants are entitled to judgment with respect to all four counts of Plaintiffs' Complaint (Doc. No. [1]).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 28, 2012

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge

(Footnote Continued From Previous Page)
Plaintiffs an opportunity to amend their complaint to add such a claim would be futile.